# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs July 1, 2016

# IN RE KEITH W., JR., ET AL.

**Appeal from the Juvenile Court for Haywood County**
**No. 2015-JV-9412   J. Roland Reid, Judge**

_____

**No. W2016-00072-COA-R3-PT – Filed August 3, 2016**

_____


This appeal involves the termination of a father's parental rights to his two children. In 2011, the children were adjudicated dependent and neglected, and the children were placed in the custody of their great-grandmother, and later, in the custody of a family friend. After the children had lived with the family friend for three continuous years, the caregiver filed a petition to terminate the father's parental rights. The trial court terminated the father's rights on the grounds of abandonment, Tenn. Code Ann. § 36-1-113(g)(1), as defined by both Tenn. Code Ann. § 36-1-102(1)(A)(i) and Tenn. Code Ann. § 36-1-102(1)(A)(iv), for failure to visit and support and for engaging in conduct that exhibits a wanton disregard for the welfare of the children. The court further found termination was in the children's best interests. We have concluded that the trial court erred by relying on Tenn. Code Ann. § 36-1-102(1)(A)(iv), abandonment by wanton disregard, as a ground to terminate the father's rights. We also hold that the court erred in terminating the father's rights on the basis of his failure to support the children. However, the trial court correctly determined that the father abandoned the children by willfully failing to visit. Thus, we affirm the trial court's judgment in part and reverse in part.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed in Part and Reversed in Part

ANDY D. BENNETT, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Bob C. Hooper, Brownsville, Tennessee, for the appellant, Keith W., Sr.

Kortney D. Simmons, Jackson, Tennessee, for the appellee, Marilyn W.

**OPINION**

I. FACTUAL AND PROCEDURAL HISTORY

This case involves the termination of a father's parental rights to his two children. Keith W., Sr. ("Father") is the biological father of Keith W., Jr., born in July 2010, and Keniyah S., born in June 2011. The parental rights of the children's mother have been terminated and the mother is not a party to this appeal.

In October 2011, the Tennessee Department of Children's Services ("DCS") filed a petition with the juvenile court to adjudicate dependency and neglect and for temporary custody, alleging that the children were dependent and neglected due to domestic violence in their home. The petition further alleged that Father was abusing drugs in the home and that the children were not properly supervised. On October 10, 2011, the court held a preliminary hearing at which Father was present. On November 30, 2011, the court entered an order finding that the children were dependent and neglected and placing custody of the children with their maternal great-grandmother, Jessie S. ("Great-Grandmother"). As reasoning for the disposition, the court stated that Father was on probation for aggravated assault, that he tested positive for cocaine on October 3, 2011, and that he admitted to a history of domestic violence in the home.

In October 2012, Great-Grandmother advised DCS that she could no longer care for the children because she was receiving daily treatment for lung cancer. DCS filed a second dependency and neglect petition on October 23, 2012, requesting the court to place the children in the custody of Marilyn W., a family friend. The trial court held a hearing on November 15, 2012; Father was not present because he was incarcerated at the Hardeman County Correctional Facility. Father sent a letter dated November 12, 2012, to Judge Reid stating that he was "in no way[] giving up [his] parental rights or custody of [his] kids." He also stated that once he was released from prison he wanted to regain custody of the children. On November 15, 2012, the trial court entered an order placing the children in the temporary custody of Marilyn W. On January 23, 2013, the trial court entered an order entitled "Adjudicatory and Dispositional Hearing Order on the Petition Filed October 23, 2012 to Change Custody" finding that Father remained incarcerated and that it was in the best interest of the children to continue in the custody of Marilyn W.

After having the children continuously in her care since July 2012, Marilyn W. filed a petition to terminate the parental rights of Father and the children's mother[1] on June 17, 2015. Father filed an affidavit of indigency and was appointed counsel. On November 19, 2015, the trial court held a hearing on the petition. On December 16, 2015, the court entered

---

[1] The trial court ultimately determined that the mother's parental rights should be terminated. The mother did not appeal this decision.

an order terminating Father's parental rights and held that termination of Father's rights was in the children's best interests. Father appeals the termination of his parental rights. He filed a statement of the evidence with the juvenile court on February 23, 2016.

## II. STANDARD OF REVIEW

The standard for appellate review of parental termination cases was recently reiterated by the Tennessee Supreme Court:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H.*, 483 S.W.3d 507, 523-24 (Tenn. 2016) (citations omitted), *petition for cert. filed sub nom. Vanessa G. v. Tenn. Dep't of Children's Servs.*, No. 15-1317 (U.S. Apr. 27, 2016).

## III. ANALYSIS

A parent has a fundamental right, based in both the federal and state constitutions, to the care, custody, and control of his or her own child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996). While this right is fundamental, it is not absolute. The State may interfere with parental rights in certain circumstances. *In re Angela E.*, 303 S.W.3d at 250. Our legislature has listed the grounds upon which termination proceedings may be brought. Tenn. Code Ann. § 36-1-113(g). Termination proceedings are statutory, *In re Angela E.*, 303 S.W.3d at 250; *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004), and a parent's rights may be terminated only where a statutory basis exists. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In the Matter of M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

To terminate parental rights, a court must determine by clear and convincing evidence the existence of at least one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citations omitted). Unlike the preponderance of the evidence standard, "[e]vidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable." *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005).

Once a ground for termination is established by clear and convincing evidence, the trial court conducts a best interests analysis. *In re Angela E.*, 303 S.W.3d at 251 (citing *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005)). "The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." *Id.* at 254. The existence of a ground for termination "does not inexorably lead to the conclusion that termination of a parent's rights is in the best interest of the child." *In re C.B.W.*, No. M2005-01817-COA-R3-PT, 2006 WL 1749534, at *6 (Tenn. Ct. App. June 26, 2006).

A. Grounds for Terminating Father's Rights

The trial court stated the following regarding the grounds for termination:

> The grounds pertinent here, as alleged in the petition are [Tenn. Code Ann. § 36-1-113] (g)(1), and (g)(3). These grounds are abandonment as defined [in Tenn. Code Ann. §] 36-1-102(1A)(i) and (iv) and what is commonly referred to as "persisten[ce] of conditions" . . . .
>
> Abandonment may be established in several ways the most pertinent and on point here would be willfully failing to visit or support for a period of four consecutive months immediately preceding the filing of a petition for termination or four consecutive months preceding a parent's incarceration or the parent engaged in conduct prior to incarceration that exhibits wanton disregard for the welfare of the child.

In a section entitled "Factual Conclusion," the court stated:

> Defendant, [Father], was imprisoned four months after the children were removed. He was released after approximately two years and nine months from an aggravated assault conviction.

Defendant, [Father], *engaged in only token visitation at best after removal and none since release from incarceration. [Father's] history of violence, drug use, lack of transportation and repeated incarcerations is also evidence of wanton disregard for the welfare of the children.* [Father] has very limited resources to support two children, has serious limitations of sight. He did complete some courses for [rehabilitation] while imprisoned and whether received by the court or not, expressed a desire for his rights to not be terminated.

The court does not find [Father's] meager attempts at visitation or rehabilitation overcome his repeated and continued disregard for the welfare of his children. [Father] has a long history with the court.

The court notes that the children do not know their father, and he has no family members here.

(Emphasis added). In a section of the order entitled "Conclusion," the court stated:

The defendant, [Father] has been in jail a substantial part of the three years since removal on an aggravated assault conviction. [Father] has had persistent legal issues involving crimes of violence alcohol and drug issues, *has exercised only token visitation or provided only token support*. [Father] is totally blind in one eye and legally blind in the other. [Father] has neither a driver's license[] nor automobile. [Father] appears to have marginally suitable housing. [Father] made efforts at rehabilitation while in prison. [Father] has not exercised any visitation with the children since his release from prison over a year ago. The court doesn't find credible his insistence he has made serious attempts at visitation. [Father] has a pending criminal charge for public intoxication. [Father's] only source of income is from disability and public assistance. The children do not know [Father]. [Father] has no family here. [Father] has failed to establish any meaningful relationship with the children.

. . .

The court . . . finds grounds for termination on both parents and considering all factors determines it is in the best interest of the children to grant the petition for termination. There is clear and convincing evidence for both requirements.

(Emphasis added).

Although the order does not apply the grounds for termination to Father in an organized, categorical fashion, we discern that the trial court terminated Father's rights on

- 5 -

the grounds of abandonment, Tenn. Code Ann. § 36-1-113(g)(1), as defined by both Tenn. Code Ann. § 36-1-102(1)(A)(i) and Tenn. Code Ann. § 36-1-102(1)(A)(iv), for failure to visit and support and for engaging in conduct that exhibits a wanton disregard for the welfare of the children. We will discuss each of the grounds below.[2] *See In re Carrington H.*, 483 S.W.3d at 525-26 (holding that "the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal").

### 1. Abandonment by willful failure to visit and support

A parent's rights may be terminated upon proof by clear and convincing evidence that the parent "abandoned" his or her child. Tenn. Code Ann. §§ 36-1-113(c)(1), (g)(1). A court must find that the abandonment was "willful." Tenn. Code Ann. § 36-1-102(1)(A)(i). To establish willfulness in this context, a petitioner must show that "a parent who failed to visit or support had the capacity to do so, made no attempt to do so, and had no justifiable excuse for not doing so." *In re Adoption of Angela E.*, 402 S.W.3d 636, 640 (Tenn. 2013); *see In re Audrey S.*, 182 S.W.3d at 863-64 (a person acts willfully if he or she knows what he or she is doing and has the intention to do what he or she is doing). "Whether a parent failed to visit or support a child is a question of fact. Whether a parent's failure to visit or support constitutes willful abandonment, however, is a question of law." *In re Adoption of Angela E.*, 402 S.W.3d at 640 (citing *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007)). A parent will not be found to have abandoned his child if his failure to support or to visit the child is not within his control. *Id.*

"Abandonment," for purposes of terminating a parent's rights, is defined to include the following:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent . . . , that the parent . . . either ha[s] willfully failed to visit or ha[s] willfully failed to support or ha[s] willfully failed to make reasonable payments toward the support of the child.

Tenn. Code Ann. § 36-1-102(1)(A)(i).

Pursuant to Tenn. Code Ann. § 36-1-102(1)(A)(i), the relevant time period at issue is the four months immediately preceding the filing of the petition to terminate Father's rights.

---

[2] The trial court specifically applied the ground of persistence of conditions, Tenn. Code Ann. § 36-1-113(g)(3), to the mother; however, we have reviewed the order and have determined the court did not terminate Father's rights on this basis. Thus, we will not address Father's arguments regarding persistence of conditions in this Opinion.

The petition for termination of parental rights was filed on June 17, 2015; therefore, we look to see if Father visited or supported the children during the four months prior to June 16.

It is undisputed that Father did not visit the children during the relevant time period. According to the statement of the evidence, Father was released from prison "in late 2014." Up until the time of the hearing on November 19, 2015, he had not visited with the children a single time. In fact, Father only visited briefly with the children on one occasion in more than three years during which the children resided with Marilyn W. Father stated that he "did not have information to contact . . . [Marilyn W.]" and believed that he was not granted visitation. The trial court specifically held it did not "find credible his insistence he has made serious attempts at visitation." The evidence is clear and convincing that Father willfully failed to visit the children in the four months preceding the filing of the petition to terminate his parental rights.

Likewise, it is undisputed that Father failed to pay any support for the children during the relevant time period. Our task is to determine whether his failure to support was willful. Father introduced a March 13, 2015, order from the Haywood County Juvenile Court setting Father's child support obligation at $0.00 with no arrears. The order noted that Father "receives SSI benefits only." There is no evidence in the record to suggest that Father had the ability to provide financial support for the children during the relevant time period. This Court has previously held that a father who was under no order to pay support and was living on disability benefits of $680 per month did not willfully fail to support his child when there was no evidence in the record to show that he had the ability to pay support. *See In re Dixie M.M.*, No. M2012-01226-COA-R3-PT, 2012 WL 4474155, at *6 (Tenn. Ct. App. Sept. 27, 2012). Based upon the foregoing, we have determined that there is not clear and convincing evidence to conclude that Father's failure to support the children was willful. Thus, we reverse the trial court's conclusion regarding Father's abandonment based on his failure to support the children.

2. Abandonment by wanton disregard

Tennessee Code Annotated section 36-1-102(1)(A)(iv) defines "abandonment" as follows:

> A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to

incarceration that exhibits a wanton disregard for the welfare of the child.

The statute "begins by describing the class of people to whom the statute applies." *In re Audrey S.*, 182 S.W.3d at 870. Specifically, the statute only applies where the parent "is incarcerated at the time of the institution of an action" or "has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action." Tenn. Code Ann. § 36-1-102(1)(A)(iv). Here, Father was released from incarceration in October 2014, and the petition to terminate was not filed until June 2015. Father was not incarcerated at the time of the filing of the petition or during the four months immediately preceding the institution of the action. Under these circumstances, it was not appropriate for the ground of abandonment by wanton disregard, as defined by Tenn. Code Ann. § 36-1-102(1)(A)(iv), to serve as a basis for terminating Father's parental rights.

B. Best Interest Analysis

Having found clear and convincing evidence exists to terminate Father's parental rights based on a finding of abandonment by failure to visit, we next consider whether the trial court properly determined that termination is in the children's best interest. *See* Tenn. Code Ann. § 36-1-113(c)(2); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003) (noting that the trial court is only required to find one statutory ground for terminating a parent's rights). "Facts relevant to a child's best interests need only be established by a preponderance of the evidence, although DCS must establish that the combined weight of the proven facts amounts to clear and convincing evidence that termination is in the child's best interests." *In re Carrington H.*, 483 S.W.3d at 535 (citing *In re Kaliyah*, 455 S.W.3d 533, 555 (Tenn. 2015)).

The factors a trial court is to consider in determining whether terminating a parent's rights to a child is in the child's best interest are set forth in Tenn. Code Ann. § 36-1-113(i) and include the following:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
>
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
>
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

- 8 -

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

The trial court considered the applicable factors set forth above and found as follows:

(i)(1)  Neither parent has made such an adjustment of circumstance, conduct or conditions as to make it safe and in the best interest[s of the children] to be in the home of the parents;

(i)(2)  Neither parent has made a lasting adjustment after a period of three years.  A lasting adjustment does not reasonabl[y] appear possible;

(i)(3)  Neither parent had maintained regular visitation or contact with the children.

(i)(4)  A meaningful relationship does not exist or has not been established between the children and with [the] parent;

(i)(5)  A change of caretakers and physical environment would have a detrimental effect on the children;

(i)(6)  Both parents have shown neglect for the children

The evidence in the record supports the trial court's findings by a clear and convincing standard. Father has not visited the children since he was incarcerated in 2012. *See* Tenn. Code Ann. § 36-1-113(i)(3) & (4). Since his release from prison, Father has been arrested for public intoxication. *See* Tenn. Code Ann. § 36-1-113(i)(1). The record shows that the children have been living with Marilyn W. for three years, the children refer to her as mother, and that Marilyn W. is willing to adopt the children. *See* Tenn. Code Ann. § 36-1-113(i)(5). We affirm the trial court's determination that terminating Father's parental rights to the children is in their best interest.

## IV. CONCLUSION

For the reasons stated above, we have concluded that the trial court erred by relying on Tenn. Code Ann. § 36-1-102(1)(A)(iv), abandonment by wanton disregard, and Tenn. Code Ann. § 36-1-102(1)(A)(i), abandonment by failure to support, as grounds to terminate Father's rights. However, we agree with the trial court's determination that Father abandoned the children by willfully failing to visit them, and we find that termination is in the children's best interest. Therefore, we affirm the trial court's judgment terminating Father's parental rights to Keith W., Jr. and Keniyah S on the ground of abandonment by failure to visit. Costs of this appeal shall be taxed to the appellant, Keith W., Sr., for which execution shall issue if necessary.

_____
ANDY D. BENNETT, JUDGE